UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Sonia Randhawa, | No. 2:21-cv-00054-KJM-DB |
| Plaintiff, | ORDER |
| v. | |
| Intel Corporation, | |
| Defendant. | |

Sonia Randhawa alleges Intel Corporation, her former employer, fired her because of her race, color, sex, and age. She also alleges Intel was motivated by her longstanding complaints of sexual harassment by a coworker. Intel moves to dismiss the retaliation claims. It argues Randhawa did not include those claims in the charge she filed with the relevant regulatory agencies, which is a prerequisite of any lawsuit. **The motion is denied.** An investigation of retaliation could "reasonably be expected to grow out of" the investigation of Randhawa's other allegations, so the prerequisite is satisfied. *See Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006) (emphasis omitted) (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)).

I.  **ALLEGATIONS**

At this stage, the court assumes the following allegations are true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1

Intel hired Randhawa in early 2015. First Am. Compl. ¶ 15, ECF No. 9. She consistently earned awards and accolades, and the company told her a promotion was in her future. *Id.* ¶¶ 16–17. But not long after she was hired, a coworker began to harass her, and she complained to the company's human resources department. *Id.* ¶¶ 18–19. Soon after her complaint, the company issued an "Improvement Required Notice" that falsely accused her of poor performance. *Id.* ¶¶ 20–21. She filed a further complaint about the false notice, and it was removed from her file. *Id.* ¶¶ 22–23.

Randhawa moved into a new group and position but faced new problems. *Id.* ¶ 25. Her new supervisor discriminated against her in assigning work, *id.* ¶¶ 27–28, and the old coworker also continued to harass her, *see id.* ¶ 29. The harassment continued unabated despite complaints. *Id.* She was also denied a promised promotion. *Id.* ¶ 30. She tried unsuccessfully to raise complaints with a vice president and other Intel management, but her complaints and appeals went unanswered. *Id.* ¶¶ 31–33.

Intel then began a reorganization effort, which included layoffs. *Id.* ¶ 34. To decide which employees would be laid off, managers assigned scores based on job codes. *See id.* ¶ 35. Intel gave Randhawa the wrong job code, and her score was lower as a result, and in fact was the lowest among her group. *See id.* ¶¶ 36–38. She alerted the company to the mistake, but no one corrected it. *See id.* ¶¶ 36–37. She was terminated, effective several weeks later. *Id.* ¶ 41. The only other person in the group to be fired was an unnamed Caucasian man, but Randhawa suspected the company had invented him to lend an appearance of neutrality to its decision; there was not any Caucasian man of his age on her team. *See id.* ¶¶ 39–40. And rather than eliminating the position Randhawa was vacating, as might be expected if her job had truly become redundant, the company began recruiting someone to take her place. *Id.* ¶ 42.

Before her termination's effective date, Randhawa began looking for a new position within the company. She applied for more than fifty jobs at Intel through its internal career services system. *Id.* ¶ 43. One opening was promising. *See id.* ¶ 44. But a condition of that position required her to remain an Intel employee after the day of her scheduled termination. *See*

/////

*id.* Intel had a policy permitting its hiring managers to extend layoff dates in this situation, but Randhawa's request for an extension was denied, and she was not rehired. *Id.* ¶ 45.

After she left Intel, Randhawa filed complaints with the California Department of Fair Employment and Housing and with the U.S. Equal Employment Opportunity Commission. *See id.* ¶ 47 & Ex. A. In her California complaint, she checked the boxes for discrimination on the basis of race, color, sex, national origin and age, and explained what had happened:

> I was hired as a Technical Project Manager. I had excellent performance. Without notice I was told my position was being eliminated. I am 43 years old. I am aware that several white and southern Indian folks stayed on.
>
> I applied for various positions within Intel before I would be terminated but Brian Staab [an Intel manager] would not keep me employed long enough to continue competing internally, therefore I lost all chances of staying with Intel. I found this discriminatory again as it would not have been a hardship to keep me on for another month to ensure I would continue to work at Intel.
> In 2015, I began to complain of stalking and sexual harassment by a coworker. The complaints continued until the end of 2016, but HR never took action.
>
> I believe I was terminated based on my sex (female) race (North Indian), national origin (Australia), [and] color in violation of Title VII of the Civil Rights Act of 1964, as amended.
>
> I believe I was terminated based on my age (43) in violation of the Age Discrimination in Employment Act of 1967, as amended.

Req. J. Notice Ex. A, ECF No. 10-1.[1] The EEOC issued a right-to-sue letter in October 2020, and Randhawa filed this action within the applicable 90-day period. *See* First Am. Compl. ¶ 48 & Ex. A; 42 U.S.C. § 2000e-5(f)(1). In her current complaint, she alleges several discrimination, harassment, retaliation, and wrongful termination claims against both Intel and several Doe defendants.[2] *See generally* First Am. Compl.

---

[1] The block quotation above preserves the inconsistent paragraph separations in the charge. The court takes judicial notice of this document for the limited purpose of ascertaining its contents. *See Hellmann-Blumberg v. Univ. of Pac.*, No. 12-286, 2013 WL 1326469, at *1 (E.D. Cal. Mar. 29, 2013).

[2] If defendants' identities are unknown when the complaint is filed, plaintiffs have an opportunity through discovery to identify them. *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). But the court will dismiss such unnamed defendants if discovery clearly would not uncover their identities or if the complaint would clearly be dismissed on other grounds. *Id.* The

Intel moves to dismiss the retaliation claims, which Randhawa asserts under both Title VII of the Civil Rights Act of 1964 and the California Fair Employment and Housing Act. *See* Mot., ECF No. 10; First Am. Compl. ¶¶ 65–80 (citing 42 U.S.C. § 2000e-3(a) and Cal. Gov't Code § 12940(h)).  Intel argues Randhawa did not include retaliation claims in the charges she filed with the California or federal authorities. *See id.* at 7–13.  If that is correct, then the retaliation claims would not have been exhausted. *See id.*  Randhawa opposes the motion, which is now fully briefed. *See* Opp'n, ECF No. 14; Reply, ECF No. 15.  The court submitted the matter after a combined hearing and scheduling conference.  Luke Peters and Marta Vanegas appeared at the hearing for Randhawa, and Scott Jang and Hardev Chhokar appeared for Intel.

## II.  LEGAL STANDARD

A party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013).  The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & Cty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).  If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted. *Iqbal*, 556 U.S. at 679.

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  But this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible. *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations elements do not alone suffice. *Id.* (quoting *Twombly*, 550 U.S. at 555).  This evaluation of plausibility is a context-specific task drawing on "judicial experience and common sense." *Id.* at 679.

---

federal rules also provide for dismissing unnamed defendants that, absent good cause, are not served within 90 days of the complaint.  Fed. R. Civ. P. 4(m).

### III. ANALYSIS

A plaintiff who alleges employment discrimination under either Title VII or the California Fair Employment and Housing Act must first file a charge with the relevant administrative agency. *See Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001) (citing 42 U.S.C. § 2000e-16(c)); *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1120–21 (1989). The relevant federal and California agencies have a work-sharing agreement under which the exhaustion of Title VII remedies also exhausts Fair Employment and Housing Act remedies. *McCarthy v. R.J. Reynolds Tobacco Co.*, 819 F. Supp. 2d 923, 935 (E.D. Cal. 2011). The California law also "mirrors" the federal law in its exhaustion requirements. *See Josephs*, 443 F.3d at 1062 n.4 (quoting *Couveau v. Am. Airlines, Inc.*, 218 F.3d 1078, 1082 n.4 (9th Cir. 2000) (per curiam)). The court therefore considers both the state and federal claims together, as have the parties. *See* Mot. at 7–13; Opp'n at 3–7.

The purposes of Title VII's administrative exhaustion requirement are to give employers notice of the claims against them and to "narrow[] the issues for prompt adjudication and decision." *B.K.B.*, 276 F.3d at 1099 (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)). A pre-litigation charge permits the administrative agency to investigate and to mediate. *See id.* The scope of any lawsuit that follows the charge is therefore limited to (1) the scope of the agency's "actual investigation" plus (2) whatever investigation could "reasonably be expected to grow out of the charge." *Josephs*, 443 F.3d at 1062 (emphasis omitted) (quoting *B.K.B.*, 276 F.3d at 1100). In some older cases, courts described this prerequisite as jurisdictional. *See, e.g., B.K.B.*, 276 F.3d at 1099–1100. The Supreme Court has since clarified that it is not. *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1850 (2019).

The charge-filing rule has often been expressed in quite permissive terms. The Ninth Circuit has said, for example, that a plaintiff's new allegations are within the scope of the original charge if they are "like or reasonably related to" the allegations in the charge. *Green v. Los Angeles County Superintendent of Schs.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989) (quoting *Brown v. Puget Sound Elec. Apprenticeship & Training Tr.*, 732 F.2d 726, 729 (9th Cir. 1984)). A new allegation can reasonably be expected to have grown out of another charge if the new allegation is

at least "consistent with the plaintiff's original theory." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (quoting *B.K.B.*, 276 F.3d at 1100). Both the Circuit and the Supreme Court have also directed district courts to construe administrative charges "liberally," *Josephs*, 443 F.3d at 1061—even with the "utmost liberality," *B.K.B.*, 176 F.3d at 1100 (citation omitted)—so as to "protect the employee's rights and statutory remedies," *Fed. Exp. Corp. v. Holowecki*, 552 U.S. 389, 406 (2008).

In some cases, a new allegation is unquestionably related to the original administrative charge. That is true, for example, of a plaintiff who originally charges his employer with wrongful termination and who later alleges the employer also refused to reinstate him. *See Josephs*, 443 F.3d at 1062; *Couveau*, 218 F.3d at 1082. In other cases the question is more difficult. If so, a court can consider the basis of the original charge, the dates of the discrimination alleged in the charge, who allegedly perpetrated the discrimination, and the locations where the discrimination allegedly occurred. *See Freeman*, 291 F.3d at 636 (citing *B.K.B.*, 276 F.3d at 1100). The focus is the factual statement in the charge: who did what, when, where, and why? *Id.* For example, in *Freeman*, a teacher had filed an administrative charge alleging discrimination in the appointment of a school administrative council, but his federal lawsuit added allegations about teaching assignments, class sizes, and other matters, which had all occurred much later. *See id.* at 637. The district court held these allegations were not "reasonably related" and therefore not exhausted, and the Ninth Circuit affirmed. *See id.* at 635, 637–38.

The parties' burdens of proof add one final layer to these rules. The exhaustion of administrative remedies "is an affirmative defense, [so] the defendant bears the burden of pleading and proving it." *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1046 n.7 (9th Cir. 2009) (alteration in original) (quoting *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)). As a result, when a defendant moves to dismiss on the basis of a plaintiff's failure to exhaust, the motion cannot be granted unless it is "obvious" or "clear" that the claims were not exhausted. *See Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) ("When an affirmative defense is obvious on the face of a complaint, . . . a

defendant can raise that defense in a motion to dismiss."); *Diunugala v. Dep't of Conservation*, No. 16-3530, 2016 WL 11520821, at *1 (C.D. Cal. Sept. 14, 2016) ("If a failure to exhaust is not clear on the face of the complaint, the appropriate procedure is to permit a party to move for summary judgment . . . ." (citation and quotation marks omitted)).

In sum, Intel can prevail only if it is obvious or clear from the face of Randhawa's complaint that her retaliation claim is inconsistent with or not reasonably related to her administrative charge. The court cannot reach that conclusion. Randhawa's administrative charge encompasses her retaliation claims. She alleged in her charge that she had complained to Intel about her coworker's stalking and sexual harassment but that Intel did not respond. Req. J. Not. Ex. A at 1. She also alleged in her charge that Intel had suddenly eliminated her position after she raised her complaints. *Id.* A supervisor then refused to delay her termination so that she could move to a new role, and she was fired. *Id.* These claims are consistent with and reasonably related to her current allegations of retaliation. Both the administrative charge and the federal complaint describe the same scenario, the same timeframe, the same position, and the same adverse actions: a high-performing woman of a different race and heritage than others at the company was terminated with neither a warning nor justification after her persistent complaints of sexual harassment went unanswered.

It is true, as Intel argues, that Randhawa's administrative charge could have been clearer. She did not check the box for "retaliation," and she did not use the word "retaliation" in her narrative. But a plaintiff's administrative claims must be interpreted liberally to protect employee rights and remedies. *See Fed. Exp. Corp.*, 552 U.S. at 406; *Josephs*, 443 F.3d at 1061. And at this stage, the court must accept Randhawa's allegations, view those allegations in a favorable light, and draw all reasonable inferences from them. Randhawa's charge is clear enough when construed liberally, as required. For the same reason, the court cannot conclude at this stage that a retaliation allegation is unlike and unrelated to Randhawa's other allegations just because she was not fired quickly after her harassment complaints or because she did not consistently name the same Intel employees. *See* Reply at 3–6.

/////

Intel relies primarily on analogies to two decisions by other district courts to advocate the opposite conclusion, *see* Mot. at 9–10, but these decisions do not support its position. In the first case, the plaintiff had filed a charge of race and disability discrimination and had described "abusive and demeaning verbal remarks" before his termination. *See Schneider v. City & Cty. of San Francisco*, No. 97-2674, 1999 WL 144878, at *11–12 (N.D. Cal. Mar. 10, 1999). "[N]owhere in his written description" did he "mention or refer to any acts of retaliation," but he asserted a retaliation claim in his lawsuit nevertheless. *Id.* at *11. The district court granted summary judgment of that claim, explaining that "[i]f the EEOC had investigated . . . , it is unlikely that it would have uncovered [the] retaliation claim." *Id.* at *12. Here, by contrast, Intel has moved to dismiss, not for summary judgment, and as summarized above, Randhawa has alleged her termination followed her complaints of sexual harassment. An investigation would likely have reached retaliation.

In the second case Intel cites, decided in the District of New Mexico, the court applied Tenth Circuit precedent under which a plaintiff's failure to check a box on the relevant charging form created a presumption that the plaintiff was not asserting the "claims represented by that box." *Gerald v. Locksley*, 785 F. Supp. 2d 1074, 1091 (D.N.M. 2011) (quoting *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007)). A plaintiff could overcome that presumption only if "the text of the charge clearly sets forth the basis of the claim." *Id.* (quoting *Jones*, 502 F.3d at 1186). The plaintiff in *Gerald* had not checked the box for retaliation, and he had not described retaliation in his narrative. *See id.* at 1111–14. Nor did the narrative even allege that he had been terminated; he had alleged only that management had done nothing after he complained about threats and abuse. *See id.* at 1114. The court therefore dismissed his claim. *See id.* Here, this court is not bound by Tenth Circuit precedent, so the *Jones* box-checking presumption is not decisive. But even if that presumption were in force, Randhawa's allegations would overcome it. She alleged she was terminated after making complaints of sexual harassment. Those allegations clearly set up a retaliation claim.

/////

## IV. CONCLUSION

**The motion to dismiss is denied.**  This order resolves ECF No. 10.

IT IS SO ORDERED.

DATED: March 30, 2022.

_____
CHIEF UNITED STATES DISTRICT JUDGE